# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

|  |  |  |
|---|---|---|
| | ) | Case No. 13-cv-7294 |
| | ) | |
| *In re Ventra Card Litigation* | ) | Hon. Joan B. Gottschall |
| | ) | |
| | ) | Hon. Magistrate Judge Jeffrey C. Cole |
| | ) | |
| | ) | **ORAL ARGUMENT REQUESTED** |
| | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COUNTS II, III & IV OF THE CONSOLIDATED CLASS ACTION COMPLAINT AND MOTION TO STRIKE REQUEST FOR PUNITIVE DAMAGES

David S. Almeida, ARDC #6285557
dalmeida@sheppardmullin.com
David M. Poell, ARDC #6302765
dpoell@sheppardmullin.com
Mikela T. Sutrina, ARDC #6311408
msutrina@sheppardmullin.com
**SHEPPARD MULLIN**
**RICHTER & HAMPTON LLP**
70 West Madison Street, 48th Floor
Chicago, Illinois 60602
Telephone: (312) 499-6300
Facsimile: (312) 499-6301

*Counsel for Cubic Corporation, Cubic Transportation Systems Chicago, Inc., Cubic Transportation Systems, Inc. and Chicago Transit Authority*

# TABLE OF CONTENTS

**Page**

INTRODUCTION & SUMMARY OF BASES FOR DISMISSAL ...............................................1

BACKGROUND ...............................................................................................................2

DISCUSSION ...................................................................................................................5

I.      Standard for Rule 12(b)(6) Motion to Dismiss. ...................................................5

II.     Plaintiffs' Claims for Unjust Enrichment and Statutory Fraud Are Nothing More Than Retreads of Their Breach of Contract Claim. .............................................5

        A.     By Virtue of Purchasing Ventra Cards to Secure Passage on CTA Vehicles, Plaintiffs Entered Into a Contractual Relationship with Defendants. ...............................................................................................6

        B.     An Unjust Enrichment Claim Against CTA, a Municipal Entity, Is Not Viable as a Matter of Law ...............................................................................7

        C.     An Express Contract Bars the Unjust Enrichment Claim. ........................7

        D.     Plaintiffs' ICFA Claim is Duplicative of Their Breach of Contract Claim. ...........8

III.    Unjust Enrichment Is Not a Standalone Basis for Recovery, But Rather Must Be Premised on a Well-Pleaded Cause of Action. ...................................................9

IV.    Count III for Violation of the Illinois Consumer Fraud Act Must Be Dismissed Because It Does Not Allege Any Independent Tortious Conduct. ...................................10

        A.     As a Municipal Corporation, CTA Is Not Subject to Liability Under ICFA.........11

        B.     Plaintiffs Do Not Allege Any Unfair Practices.....................................................11

        C.     Plaintiffs Do Not Plead Allegations of Deceptive Conduct Sufficient to Satisfy the Heightened Pleading Standard of Fed.R.Civ.P. 9(b). .........................12

V.     Plaintiffs Kenger and Ro Do Not Articulate Any Theory of Actionable Conduct Under the Electronic Funds Transfer Act. .........................................................14

VI.    Plaintiffs' Request for Punitive Damages Should Be Stricken.........................................15

CONCLUSION................................................................................................................16

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009)...................................................................................................14

*Association Benefit Services v. Caremark Rx, Inc.*
    493 F.3d 841 (7th Cir. 2007) ..................................................................................9

*Astor Professional Search, LLC v. MegaPath Corp.*
    No. 12-cv-2313, 2013 WL 1283810 (N.D. Ill. Mar. 27, 2013) ...........................7, 10

*Avery v. State Farm Mutual Automobile Insurance Co.*
    835 N.E.2d 801 (Ill. 2005) ......................................................................................8

*Bagg v. HighBeam Research, Inc.*
    No. 12-cv-9756, 2013 WL 3466846 (N.D. Ill. July 10, 2013) ............................7, 8

*Board of Education v. A, C & S, Inc.*
    546 Ill. 2d 428 (1989) ............................................................................................11

*Beck v. Dobrowski*
    559 F.3d 680 (7th Cir. 2009) ..................................................................................5

*Cleary v. Philip Morris Inc.*
    656 F.3d 511 (7th Cir. 2011) ..................................................................................9

*DuPage Aviation Corp. v. DuPage Airport Authority*
    594 N.E.2d 1334 (Ill. App. Ct. 1992) ...................................................................11

*EEOC v. Concerta Health Services, Inc.*
    496 F.3d 773 (7th Cir. 2007) ..................................................................................5

*Eidukas v. Chicago Transit Authority*
    No. 05 CH 5490, 2006 WL 4591042 (Ill. Cir. Ct. Apr. 24, 2006).........................11

*George v. Chicago Transit Authority*
    374 N.E.2d 679 (Ill. App. Ct. 1978) .....................................................................15

*Greenberger v. GEICO General Insurance Co.*
    631 F.3d 392 (7th Cir. 2011) ..................................................................................8

*Howard v. Chicago Transit Authority*
    931 N.E.2d 292 (Ill. App. Ct. 2010) .......................................................................6

*Langendorf v. Conseco Senior Health Insurance Co.*
    590 F. Supp. 2d 1020 (N.D. Ill. 2008) ....................................................................9

*Llames v. JP Morgan Chase & Co.*
No. 11-cv-5899, 2012 WL 1032910 (N.D. Ill. Mar. 23, 2012) ...............................................11

*Lopez v. Pactiv Corp.*
No. 11-cv-4599, 2012 WL 1463579 (N.D. Ill. Apr. 27, 2012) ...............................................15

*MacNeil Automotive Products, Ltd. v. Cannon Automotive Ltd.*
715 F. Supp. 2d 786 (N.D. Ill. 2010) ......................................................................................4

*Morrow v. L.A. Goldschmidt Associates, Inc.*
492 N.E.2d 181 (Ill. 1986) ......................................................................................................15

*Oshana v. Coca-Cola Co.*
472 F.3d 506 (7th Cir. 2006) ...................................................................................................10

*Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*
631 F.3d 436 (7th Cir. 2011) .............................................................................................12, 13

*Robinson v. Toyota Motor Credit Corp.*
775 N.E.2d 951 (Ill. 2002) ................................................................................................10, 11

*Roboserve, Inc. v. Kato Kagaku Co.*
78 F.3d 266 (7th Cir. 1996) .....................................................................................................15

*Sears v. Likens*
912 F.2d 889 (7th Cir. 1990) ...................................................................................................12

*Segal v. Geisha NYC, LLC*
517 F.3d 501 (7th Cir. 2008) .....................................................................................................5

*Shaw v. Hyatt Int'l Corp.*
461 F.3d 899 (7th Cir. 2006) .....................................................................................................8

*Siegel v. Shell Oil Co.*
612 F.3d 932 (7th Cir. 2010) ...................................................................................................10

*Stack v. Regional Transportation Authority*
461 N.E.2d 969 (Ill. 1984) .........................................................................................................6

*United States v. Stephens*
421 F.3d 503 (7th Cir. 2005) ...................................................................................................12

*West Howard Corp. v. Indian Harbor Insurance Co.*
No. 10-cv-7857, 2011 WL 2582353 (N.D. Ill. June 29, 2011)....................................6, 7, 8, 10

*Wooley v. Jackson Hewitt, Inc.*
540 F. Supp. 2d 964 (N.D. Ill. 2010) ........................................................................................5

<u>Statutes and Regulations</u>

Electronic Funds Transfer Act, 15 U.S.C. § 1693, *et seq.* ("EFTA")..............................2, 9, 13, 14

Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, *et seq.* ("ICFA") ..................................................................................2, 3, 4, 5, 8, 9, 10, 11, 12, 14

12 C.F.R. § 205.2(m)(1)..................................................................................................14

Fed.R.Civ.P. 9(b)..................................................................................................11, 12, 13

Fed.R.Civ.P. 12(b)(6)........................................................................................................4

Fed.R.Civ.P. 12(f) ..........................................................................................................15

Cubic Corporation, Cubic Transportation Systems Chicago, Inc., Cubic Transportation Systems, Inc. (collectively, the "Cubic Entities") and the Chicago Transit Authority ("CTA" and with the Cubic Entities, "Defendants"), by and through undersigned counsel, respectfully submit this Memorandum of Law in Support of their Motion to Dismiss Counts II, III and IV of the Consolidated Class Action Complaint filed by James D. Kenger ("Kenger"), Min Ro ("Ro"), Stacy Allen ("Allen") and Anish Patel ("Patel") (collectively, "Plaintiffs") and Motion to Strike Plaintiffs' Request for Punitive Damages.

### INTRODUCTION & SUMMARY OF BASES FOR DISMISSAL

This putative class action lawsuit arises out of Defendants' implementation of a new payment card system for CTA passengers known as Ventra. Despite some negative press at the beginning of the conversion in the Fall of 2013, Ventra has unquestionably improved the transit experiences of the more than 1.6 million Chicagoans who ride on CTA vehicles every day. Unlike its predecessor, Ventra is an "open fare" payment system that allows customers to use a contactless payment card to pay for transit rides in the City of Chicago and surrounding suburbs. Ventra utilizes an account-based payment system that allows riders to link their Ventra account to RFID-equipped bank cards or phones which can be utilized for transit and debited on a "pay-as-you-go" basis.[1] Moreover, consumers who elect to register their Ventra cards enjoy even more versatility including automatic value loads and the ability to use the card as a payment device at certain retail locations. And, transit riders can still pay with cash if so desired.

Like much of the initial negative press, Plaintiffs' lawsuit is based on misunderstandings about how the Ventra system operates and perhaps some confusion regarding their account

---

[1]    The acronym RFID stands for "radio-frequency identification" and refers to a type of technology whereby digital data is encoded in a chip, which can be captured and read wirelessly by a card reader. The technology is by no means unique to the Ventra card; numerous bank (ATM and credit) cards utilize contactless technology including Visa PayWave, MasterCard PayPro, American Express ExpressPay and Discover Zip.

statements. Despite the florid prose of the Consolidated Complaint, the issues complained about do *not* rise to the level of fraudulent, deceptive or unfair conduct. There was simply no deceptive or unfair conduct committed by Defendants and, once all the rhetoric is set aside, Plaintiffs' concerns are that they believe they were charged unauthorized or incorrect amounts and/or that their Ventra accounts were not properly credited certain balance transfers or value loads. Taking these allegations at face value—as required—for now, they nonetheless do not even begin to approach the threshold for alleging consumer fraud.

Setting aside the fact that none of the Plaintiffs were overcharged and thus there was no breach of the User Agreement (nor any resultant damages),[2] the remaining counts asserting a misguided unjust enrichment theory and inapposite statutory claims under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, *et seq.* ("ICFA") and the Electronic Funds Transfer Act, 15 U.S.C. § 1693, *et seq.* ("EFTA") should be dismissed. This Court should reject Plaintiffs' attempt to manufacture extra-contractual claims when the parties' relationship is governed by the Fare Schedule and the User Agreement. Moreover, these claims are untenable for a litany of other reasons including that the unjust enrichment and ICFA claims cannot be maintained against CTA, a municipal entity.

## BACKGROUND

On October 10, 2013, Kenger initiated this litigation by filing a complaint asserting that Defendants charged him twice for a single fare for his rides on CTA buses. (No. 13-cv-07294, DE #1, ¶¶ 17-22.)[3] On December 2, 2013, Ro followed by filing a separate complaint alleging

---

[2]    Defendants have thoroughly reviewed the transaction histories of the representative Plaintiffs and do not believe that any of them experienced any unauthorized or inaccurate charges or other issues, and that the User Agreement was not breached nor were there any damages. Defendants will move for summary judgment on these issues at the appropriate time.

[3]    Kenger initially complained that, on September 26, 2013, Ventra "repeatedly charged plaintiff $2 for the privilege of talking to a live customer service representative." (*Id.* ¶ 19.) Although Plaintiffs have

that the Ventra system debited money from her bank account when she attempted to load transit value onto her Ventra Card, but that such transaction(s) were never credited to her Ventra account. (No. 13-cv-08614, DE #1, ¶¶ 27-29.)[4] On January 4, 2014, Stacy Allen ("Allen") filed a complaint alleging that her account was charged twice for the full-fare and the transfer-fare. (No. 14-cv-00059, DE #1, ¶¶ 51-58.)

On January 8, 2014, these cases were consolidated for all purposes before this Honorable Court under the caption *In re Ventra Card Litigation*, No. 13-cv-07294. (DE #34.) On January 29, 2014, Plaintiffs filed their Consolidated Class Action Complaint, which added one additional plaintiff, Anish Patel ("Patel"), who had not been named as a plaintiff in any of the three previously filed complaints.[5]

Plaintiffs allege that they are all registered Ventra Card accountholders who "were charged improper fares or fees or otherwise had their money improperly debited from their bank and/or Ventra accounts, by Defendants without authorization and in contradiction to the CTA Fare Schedule and Ventra's Terms and Conditions." (*See generally id.* ¶¶ 62-64.) For the sake of brevity and ease of reference, Plaintiffs' allegations are summarized herein:

---

not persisted in this categorically untrue allegation, they nonetheless try to paint the inaccurate picture that Ventra charged consumers a $2.00 "Customer Service Fee" if they used the Debit Feature and wished to speak to a live customer service operator over the phone. A "customer service fee" was never charged. (*Compare* Consolidated Compl. ¶¶ 44 & 45 (noting that Defendants announced in May 2013 that the Customer Service Fee would be eliminated, *with id.* ¶ 3 (noting that Ventra launched in September 2013).)

[4] Additionally, Ro initially claimed that her Ventra account was never credited a $5 fee that she should have been credited because she registered her Ventra Card within 90 days of purchase. (*Id.* ¶¶ 23-26.) However, Ro has omitted reference to this alleged $5 uncredited charge in the Consolidated Complaint.

[5] Patel's claim is particularly curious in that he claims that he was unable to transfer the remaining value ($52.00) on his legacy Chicago Card Plus to Ventra. (Compl. ¶¶ 89 & 90.) As evidenced by his transaction history, the $52.00 was transferred to his Ventra account on October 18, 2013, and that money, along with an additional $49.00, currently resides in his account.

| Plaintiff | Nature of Allegations | Dates and Details of CTA Rides |
|---|---|---|
| Kenger | 1) Charged twice for full fare of $2.00;<br><br>2) Charged twice for transfer fare of $0.25; and<br><br>3) Unauthorized debits when he attempted to transfer his Chicago Card balance to his Ventra account<br><br>**(Counts I, II, III & IV)** | 1) On Sept. 24, 2013, allegedly charged twice for one full-fare (¶¶ 75-77); and<br><br>2) On Oct. 3, 2013, allegedly charged twice for full fare *and* transfer fare after riding another CTA vehicle within 2 hours of his first ride (¶¶ 78-85).[6] |
| Ro | Failure to credit Ventra account for amounts allegedly added from bank account<br><br>**(Counts I, II, III & IV)** | Alleges that $20 was debited from her bank account for her Ventra Card, but that this $20 was never credited to her account. (¶¶ 85-90) |
| Allen | 1) Charged twice for full fare of $2.00; and<br><br>2) Charged twice for transfer fare of $0.25<br><br>**(Counts I, II & III only)** | On Oct. 25, 2013, alleges that she was charged twice for both the full fare and transfer fare within 2 hours of her first ride. (¶¶ 65-72) |
| Patel | Unable to transfer Chicago Card balance to Ventra Card<br><br>**(Counts I, II & III only)** | In Sept. or Oct. 2013, Patel allegedly purchased a Ventra Card and attempted to transfer the $52 balance from his Chicago Card to the Ventra Card, but was unable to do so. (¶¶ 89 & 90) |

---

[6]      Kenger also complains, without much in the way of explication, that—on an unspecified date(s)—Defendants made "improper and unauthorized debits" to his account. (*See id.* ¶ 84.)

## DISCUSSION

### I. STANDARD FOR RULE 12(B)(6) MOTION TO DISMISS.

Federal Rule of Civil Procedure 12(b)(6) "allows a defendant to seek dismissal of a complaint that fails to state a claim upon which relief can be granted." *MacNeil Auto. Prods., Ltd. v. Cannon Auto. Ltd.*, 715 F. Supp. 2d 786, 789 (N.D. Ill. 2010) (Gottschall, J). Dismissal is appropriate "if the complaint fails to set forth enough facts to state a claim to relief that is *plausible on its face*." *Segal v. Geisha NYC, LLC*, 517 F.3d 501, 504 (7th Cir. 2008) (emphasis added). In order to withstand a motion to dismiss challenging the sufficiency of its complaint, a plaintiff must set forth sufficient facts to raise its right to relief beyond the purely speculative level. *See, e.g.*, *EEOC v. Concerta Health Serv., Inc.*, 496 F.3d 773, 776-77 (7th Cir. 2007) ("[I]t is not enough for a complaint to avoid foreclosing possible bases for relief; it must actually suggest that the plaintiff has a right to relief."). While detailed factual allegations are not necessary to meet that standard, "merely reciting the elements of a cause of action is insufficient." *Wooley v. Jackson Hewitt, Inc.*, 540 F. Supp. 2d 964, 970 (N.D. Ill. 2010).[7]

### II. PLAINTIFFS' CLAIMS FOR UNJUST ENRICHMENT AND STATUTORY FRAUD ARE NOTHING MORE THAN RETREADS OF THEIR BREACH OF CONTRACT CLAIM.

Plaintiffs implicitly acknowledge that any claims they may have against Defendants reside exclusively under a breach of contract theory. (*See, e.g.*, Compl. ¶¶ 31 & 40; Ex. A & Ex. B thereto.) Counts II and III are merely retreads of that claim couched as unjust enrichment or consumer fraud. Plaintiffs' attempt to bootstrap an unjust enrichment claim and a statutory fraud

---

[7]     These principles are particularly acute in the class action context, and indeed, the Seventh Circuit has advised trial courts to consider carefully the abusive effects of litigation ostensibly brought to vindicate perceived consumer harm. *See, e.g.*, *Beck v. Dobrowski*, 559 F.3d 680, 682-83 (7th Cir. 2009) ("[A] litigant must not be permitted to use a largely groundless claim to simply take up the time of a number of other people, with the intent to do so representing an *in terrorem* increment of the settlement value, rather than a reasonably founded hope that the [discovery] process will reveal relevant evidence." (internal quotations omitted)).

claim under the ICFA (and thereby keep punitive damages in play) to their breach of contract claim should not be countenanced.

### A. By Virtue of Purchasing Ventra Cards to Secure Passage on CTA Vehicles, Plaintiffs Entered Into a Contractual Relationship with Defendants.

As a threshold issue, the only conceivable cause of action for which Plaintiffs can state a claim is for breach of the User Agreement. The crux of Plaintiffs' case is that their Ventra accounts were overcharged, which allegedly constituted a breach of Defendants' obligation "to charge only the fees and fares authorized under Ventra's Terms and Conditions and the CTA Fare Schedule." (Compl. ¶ 101.) The law is clear that use of a fare card—such as a Ventra Card—to ride a bus or train creates a contract between the consumer and the entity providing the service, which includes all terms of use referenced and incorporated on the fare card.

In *Howard v. Chicago Transit Authority*, plaintiff filed a putative class action lawsuit alleging that the CTA's practice of allowing transit cards to expire one year after issuance while retaining any unused value on the expired cards amounted to, *inter alia*, conversion and unjust enrichment. *See* 931 N.E.2d 292, 295 (Ill. App. Ct. 2010). In affirming dismissal of plaintiff's complaint, the *Howard* Court reasoned that "Plaintiff and the CTA entered a contract for carriage when plaintiff purchased a transit card by depositing a chosen monetary amount" and subsequently "used that transit card to ride the CTA."[8] *Id.* at 296 (stating that "by purchasing and using the transit card, plaintiff agreed to its terms and conditions"); *see also Stack v. Reg'l Transp. Auth.*, 461 N.E.2d 969, 971-72 (Ill. 1984) (holding that the terms on a CTA fare pass are incorporated into carrier's contract for carriage and are enforceable as written). Plaintiffs, by purchasing and/or using a Ventra Card, agreed to the terms and conditions of the User

---

[8]     The complaint in *Howard* did not contain a cause of action for breach of contract.

Agreement and thereby entered into a contractual relationship with CTA.[9]

**B.    An Unjust Enrichment Claim Against CTA, a Municipal Entity, Is Not Viable as a Matter of Law.**

The unjust enrichment claim must be dismissed as against CTA because "implied contracts are not recognized where one of the parties is a municipal corporation." *Howard*, 931 N.E.2d at 298 (holding that CTA is a municipal corporation that cannot be subject to unjust enrichment claims). The Complaint alleges that CTA is a municipal corporation. (*See* Compl. ¶ 20.) Plaintiffs can never cure this pleading deficiency, and the unjust enrichment claim against CTA should be dismissed with prejudice.

**C.    An Express Contract Bars the Unjust Enrichment Claim.**

Due to the fact that "unjust enrichment is based on an implied contract, where there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application." *Astor Prof'l Search, LLC v. MegaPath Corp.*, No. 12-cv-2313, 2013 WL 1283810, at *3 (N.D. Ill. Mar. 27, 2013) (quoting *People ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 177 (Ill. 1992)).[10] As in *Howard*, Plaintiffs' unjust enrichment claim should be dismissed because Plaintiffs entered into a contract for carriage with CTA, which means that the theory of unjust enrichment is untenable. *See Howard*, 931 N.E.2d at 298 (holding unjust enrichment "is based upon an implied contact of law and is not available where the parties' relationship is governed by contract"). Plaintiffs have alleged that the User Agreement and incorporated CTA Fare Schedule govern, *see* Compl. ¶¶ 31 & 40; Ex. A & Ex. B, and therefore an unjust enrichment claim cannot stand.

---

[9]    The Complaint does not allege an agreement between Plaintiffs and the Cubic Entities. This notwithstanding, the rationale of *Howard* would still bar additional claims against the Cubic Entities if this Court finds that the User Agreement governs Plaintiffs' relationship with the Cubic Entities as well.

[10]    A copy of each unpublished case cited herein is attached as Group Exhibit A to the Declaration of David S. Almeida, dated April 11, 2014 ("Almeida Decl.").

Nor can Plaintiffs plead their unjust enrichment claim in the alternative; "when a party incorporates allegations of a specific contract into its unjust enrichment claim, dismissal is appropriate." *Bagg v. HighBeam Research, Inc.*, No. 12-cv-9756, 2013 WL 3466846, at *7 (N.D. Ill. July 10, 2013). That is the case here. Both Count I and Count II of the Complaint expressly incorporate all paragraphs of the preceding factual sections into these Counts, *see* Compl. ¶¶ 99 & 105, which means that Plaintiffs' unjust enrichment claim "include[s] allegations of a specific contract governing the parties' relationship." *Bagg*, 2013 WL 3466846, at *7 (internal quotations and citation omitted).

### D. Plaintiffs' ICFA Claim is Duplicative of Their Breach of Contract Claim.

It is firmly established under Illinois law that breach of a contractual promise, without more, is ***not*** actionable under the ICFA. Thus, "when breach of contract and Consumer Fraud Act counts rely on the same facts, it is clear that the consumer-fraud claim is merely a breach of contract count clothed as a violation of the Consumer Fraud Act." *W. Howard Corp. v. Indian Harbor Ins. Co.*, No. 10-cv-7857, 2011 WL 2582353, at *4 (N.D. Ill. June 29, 2011) (internal quotations omitted). This rule has been affirmed on several occasions by the Illinois Supreme Court. *See, e.g.*, *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 844 (Ill. 2005) (stating that the ICFA was "not intended to apply to every contract dispute or to supplement every breach of contract claim with a redundant remedy"). The governing principle of *Avery* is that "a 'deceptive act or practice' involves more than the mere fact that a defendant promised something, and then failed to do it," because "that type of 'misrepresentation' occurs every time a defendant breaches a contract." *Id.*

Since *Avery*, courts have repeatedly held that "[w]hen allegations of consumer fraud arise in a contractual setting, the plaintiff must prove that the defendant engaged in deceptive acts or practices *distinct from any underlying breach of contract*." *Greenberger v. GEICO Gen. Ins.*

*Co.*, 631 F.3d 392, 399 (7th Cir. 2011) ("*Avery* held that a consumer-fraud claim under the statute requires something more than a garden-variety breach of contract."); *see also Shaw v. Hyatt Int'l Corp.*, 461 F.3d 899, 901 (7th Cir. 2006) (dismissing ICFA claim per *Avery* after concluding that it only "seeks to enforce an unfulfilled contractual promise").

Here, Plaintiffs' statutory consumer fraud claim (Count III) must be dismissed because review of the Complaint demonstrates that the breach of contract claim and the ICFA claim are based on the same factual allegations. (*See* Compl. ¶¶ 99 & 113 (incorporating the factual allegations of paragraphs 1-98 into Counts I & III).) Plaintiffs' ICFA claim does not allege any conduct that is separate and distinct from the alleged breach of contractual promises. Plaintiffs attempt to disguise their consumer fraud theory by alleging in Count III that "Defendants represented that Plaintiffs and the Class would only be charged the fees and fares indicated in Ventra's Terms and Conditions and the CTA Fare Schedule." (*Id*. ¶ 115.) Yet this argument proceeds from a flawed premise because the only "representations" Plaintiffs identify regarding fees and fares are to be found in the sources of the parties' alleged contractual relationship. (*See* Compl. ¶¶ 40-49; Ex. A & Ex. B thereto.) In short, Plaintiffs cannot maintain an ICFA claim based on alleged breaches of the Ventra User Agreement. *See also Langendorf v. Conseco Senior Health Ins. Co.*, 590 F. Supp. 2d 1020, 1023 (N.D. Ill. 2008) (holding that plaintiff's restatement of breach of contract claim as an ICFA claim required dismissal of ICFA claim).

## III.    UNJUST ENRICHMENT IS NOT A STANDALONE BASIS FOR RECOVERY, BUT RATHER MUST BE PREMISED ON A WELL-PLEADED CAUSE OF ACTION.

Unjust enrichment "is not a separate cause of action that, standing alone, will justify an action for recovery." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (quoting *Martis v. Grinnell Mut. Reinsurance Co.*, 905 N.E.2d 920, 928 (Ill. App. Ct. 2009)). Rather, "it is a condition that may be brought about by unlawful or improper conduct as defined by law,

such as fraud . . . and may be redressed by a cause of action based upon that improper conduct." *Id.* Thus, "if an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will stand or fall with the related claim." *Id.* at 517; *see also Ass'n Benefit Servs. v. Caremark Rx, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007).

The only independent causes of action that could possibly serve as a basis for the unjust enrichment claim are Plaintiffs' ICFA and EFTA claims. Yet, for the reasons explained herein, Plaintiffs do not state claims for violation of either statute. Their claims rise and fall on whether the User Agreement was breached and, as an express contract governs, a *quasi*-contractual theory is not viable. *See, e.g.*, *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (affirming dismissal of unjust enrichment claim where ICFA claim was not viable); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 515 (7th Cir. 2006) (same).

## IV. COUNT III FOR VIOLATION OF THE ILLINOIS CONSUMER FRAUD ACT MUST BE DISMISSED BECAUSE IT DOES NOT ALLEGE ANY INDEPENDENT TORTIOUS CONDUCT.

The ICFA "is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *MegaPath*, 2013 WL 1283810, at *3 (internal quotations omitted). Accordingly, under the ICFA "a plaintiff can maintain a claim that is premised on either deceptive or unfair trade practices." *Id.* at *4. To state a claim for *deceptive* conduct, Plaintiffs must allege: "(1) a deceptive act or practice, (2) intent on the defendant's part that plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damages to the plaintiff (5) proximately caused by the deception." *W. Howard Corp.*, 2011 WL 2582353, at *3 (citing *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 594 (Ill. 1996)). By contrast, an *unfair* practice is one "that offends public policy; is immoral, unethical, oppressive, or unscrupulous; or causes substantial injury to

consumers." *MegaPath*, 2013 WL 1283810, at *4 (citing *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002)). To state a claim for an unfair practice, "[a]ll three criteria do not need to be satisfied"; rather, "[a] practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id.* at 961. Here, there was neither unfair or deceptive conduct, and Plaintiffs have not alleged any.

### A.     As a Municipal Corporation, CTA Is Not Subject to Liability Under ICFA.

As with their unjust enrichment claim, Plaintiffs' ICFA claim against CTA is untenable as a matter of law. CTA is ***not*** subject to the ICFA because "the CTA is a body politic and municipal corporation and, therefore, cannot be sued under the Act." *Eidukas v. Chi. Transit Auth.*, No. 05 CH 5490, 2006 WL 4591042 (Ill. Cir. Ct. Apr. 24, 2006); *see also DuPage Aviation Corp. v. DuPage Airport Auth.*, 594 N.E.2d 1334, 1341 (Ill. App. Ct. 1992) (holding that the legislature did not intend to make municipal corporations subject to the ICFA).[11]

### B.     Plaintiffs Do Not Allege Any Unfair Practices.

The Complaint lacks any independent factual bases that could support a claim for violation of the ICFA under the unfair prong. Plaintiffs do not allege that Defendants committed any acts that (i) violate public policy, (ii) are immoral, unethical, oppressive or unscrupulous, or (iii) cause substantial injury. Indeed, Count III does not even mention the *Robinson* factors or advance a theory alleging how Defendants committed unfair practices. Plaintiffs have not stated a claim for an unfair practice under the ICFA. *See also Llames v. JP Morgan Chase & Co.*, No.

---

[11]     The Illinois Supreme Court has also rejected the argument that municipal corporations are "persons" under the ICFA. *See, e.g., Bd. of Educ. v. A, C & S, Inc.*, 546 Ill. 2d 428, 468 (1989) ("The [IFCA] clearly makes an unusual distinction that the Act only applies to domestic and foreign corporations. A body politic or municipal entity is neither type of corporation, and we believe that such an interpretation would again ignore language within the Act.").

11-cv-5899, 2012 WL 1032910, at *3 (N.D. Ill. Mar. 23, 2012) (stating that plaintiff must plead more than just a breach of contract to state a claim for unfair practices under ICFA).

### C. Plaintiffs Do Not Plead Allegations of Deceptive Conduct Sufficient to Satisfy the Heightened Pleading Standard of Fed.R.Civ.P. 9(b).

Plaintiffs' ICFA claim—to the extent it attempts to assert deceptive conduct—is governed by Federal Rule 9(b)'s heightened pleading requirement. (*See* Compl. ¶¶ 116-121 (alleging the five elements for deceptive practices under the ICFA).) As the Seventh Circuit has made clear, "[w]hen a plaintiff in federal court alleges fraud under the ICFA, the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011) (stating that "the dictates of Rule 9(b) apply to allegations of fraud, not claims of fraud"). In order to satisfy Rule 9(b)'s heightened pleading standard, a plaintiff must allege "the identity of the person making the representation, the time, place and content, of the misrepresentation, and the method by which the misrepresentation was communicated." *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990) (citations omitted). In the words of the *Pirelli* Court, "[i]n adding flesh to the bones of the word particularity, we have often incanted that a plaintiff ordinarily must describe the 'who, what, when, where, and how' of the fraud—'the first paragraph of any newspaper story.'" *Pirelli*, 631 F.3d at 441-42 (citation omitted).

Here, Plaintiffs allege that Defendants "misrepresented and/or failed to disclose the actual fees and fares consumers would be charged." (Compl. ¶ 116.) Plaintiffs also assert that these "misrepresentations and omissions constitute deceptive and unfair practices under the ICFA" and claim, in conclusory fashion, that the Defendants *intended* consumers to rely on these deceptive representations. (*Id.* ¶¶ 117 & 118.) Such allegations clearly sound in fraud and must be pled with particularity. *See, e.g.*, *United States v. Stephens*, 421 F.3d 503, 507 (7th Cir. 2005) (stating

that fraud embraces half-truths "that the defendant knows to be misleading and which the defendant expects another to act upon to his detriment and to the defendant's benefit").

However, Plaintiffs' Complaint is devoid of any discernible, factual details that could satisfy their "burden of pleading plausible grounds for suspecting that the defendant[s] [were] engaged in a fraudulent scheme." *Pirelli*, 631 F.3d at 447. Taken at face value, Plaintiffs' ICFA claim alleges that CTA and the Cubic Entities engaged in a conspiracy to deceive consumers into signing up for Ventra so their accounts could be overcharged in contravention of the CTA Fare Schedule. Beyond the sheer lunacy of this proposition, the problem for Plaintiffs is that they do not allege any facts or plausible theories to support these conclusory allegations. Instead, Plaintiffs resort to alleging that, "on information and belief, Defendants knew that the contactless technology used in Ventra would result in overcharges." (Compl. ¶ 54.) Reliance on "information and belief" is simply not enough. *See, e.g.*, *Pirelli*, 631 F.3d at 442 ("[W]e have ruled that a plaintiff generally cannot satisfy the particularity requirement of Rule 9(b) with a complaint that is filed on information and belief.").

Plaintiffs offer nothing more than unfounded suspicions of fraudulent activity to prop up their claim under the ICFA's deceptive prong. The basis for such suspicions, however, "must make the allegations *plausible*, even as courts remain sensitive to information asymmetries that may prevent a plaintiff from offering more detail." *Pirelli*, 631 F.3d at 443 (emphasis in original). In the event that this Court permits Plaintiff to attempt to transform their breach of contract claim into an Illinois consumer fraud claim, Count III should nonetheless be dismissed for failing to satisfy Rule 9(b).

13

## V.  PLAINTIFFS KENGER AND RO DO NOT ARTICULATE ANY THEORY OF ACTIONABLE CONDUCT UNDER THE ELECTRONIC FUNDS TRANSFER ACT.

Count IV of the Complaint is brought on behalf of Plaintiffs Kenger and Ro only, and conclusorily alleges violation of the EFTA.  (*See* Compl. ¶¶ 124-126.)  The statutory framework for the EFTA is laid out in 15 U.S.C. § 1693, *et seq*., but the Complaint does not even allege what provision of the statute Defendants supposedly violated.  Rather, the EFTA claim is predicated solely on the allegation that Defendants debited "bank accounts to pay for unauthorized charges," and that such conduct violates the EFTA.  (*See* Compl. ¶¶ 124 & 125.)

To baldly plead that they experienced charges that were "unauthorized" is to advance a legal conclusion insufficient to overcome a motion to dismiss.  *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The EFTA defines "unauthorized electronic fund transfers" as those initiated by a person *other than the consumer* and without proper authority.  *See* 15 U.S.C. § 1693a(12).  However, Kenger and Ro both admit that they initiated the electronic fund transfers at issue, *see* Compl. ¶¶ 84-85, so therefore their transfers were authorized under the EFTA.

Under the EFTA's plain language, no unauthorized electronic fund transfers occurred here.  The EFTA expressly excludes from the relevant definition all transfers not accompanied by notice to the financial institution involved that "transfers by such other person are no longer authorized."  15 U.S.C. § 1693a(12)(A).  Here, Kenger alleges that he voluntarily provided his credit or debit card information in the course of registering his Ventra Card.  (*See* Compl. ¶¶ 73 & 74.)  And, Ro alleges that she "purchased a Ventra Card," "registered it" and "[i]n October 2013" she initiated a transaction whereby she attempted to transfer $20.00 from her (unspecified) "Bank Account" to her "Ventra Account."  (*Id.* ¶¶ 85 & 86.)  Plaintiffs initiated the transactions in question and do not allege that they notified their banks or credit card providers that the transfers in question were unauthorized.  Absent the required notification to their respective

14

financial institutions, they do not state a claim. *See* 15 U.S.C. § 1693a(12)(A); 12 C.F.R. § 205.2(m)(1). As with the ICFA claim, while Plaintiffs take umbrage with the amounts charged or credited—due to their lack of understanding of their account statements—those issues do not provide any basis for an EFTA claim.

## VI.    PLAINTIFFS' REQUEST FOR PUNITIVE DAMAGES SHOULD BE STRICKEN.

Plaintiffs' ask this Court for punitive damages, *see* Compl. § VIII(iv), but the Complaint lacks any basis to justify such relief. First, punitive damages are not recoverable from CTA. *See, e.g.*, *George v. Chi. Transit Auth.*, 374 N.E.2d 679, 682 (Ill. App. Ct. 1978) ("[T]he right to recover punitive damages provided by the Commerce Commission Act against a public utility is not applicable to the CTA."). Moreover, as the Seventh Circuit has stated, "Illinois courts do not favor punitive damages and insist that plaintiffs must establish not only simple fraud but gross fraud, breach of trust, or other extraordinary or exceptional circumstances clearly showing malice or willfulness." *Roboserve, Inc. v. Kato Kagaku Co.*, 78 F.3d 266, 275 (7th Cir. 1996). Plaintiffs' Complaint is bereft of any allegations of "malice or willfulness" that would warrant punitive damages, and thus the request should be stricken pursuant to FED.R.CIV.P. 12(f). *See, e.g.*, *Lopez v. Pactiv Corp.*, No. 11-cv-4599, 2012 WL 1463579, at *2 (N.D. Ill. Apr. 27, 2012) (granting motion to strike punitive damages due to plaintiff's failure to articulate a factual basis for pleading such damages).[12]

---

[12]     Plaintiffs cannot recover punitive damages for their breach of contract claim either. *See, e.g.*, *Morrow v. L.A. Goldschmidt Assocs., Inc.*, 492 N.E.2d 181, 183 (Ill. 1986) ("As a general rule, punitive damages are not recoverable for breach of contract. The sole purpose of contract damages is to compensate the nonbreaching party, and punitive damages are not available even for a 'willful' breach of contract.").

## CONCLUSION

For the foregoing reasons, Defendants respectfully request this Honorable Court: (i) to dismiss Counts II, III and IV of Plaintiffs' Consolidated Class Action Complaint with prejudice; (ii) alternatively, to strike Plaintiffs' demand for punitive damages and (iii) to award all other relief deemed equitable and just.

Dated:  April 11, 2014

                                  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

                               By      /s/ David S. Almeida
                                           One of Their Attorneys

                                           David S. Almeida, ARDC #6285557
                                           dalmeida@sheppardmullin.com
                                           David M. Poell, ARDC #6302765
                                           dpoell@sheppardmullin.com
                                           Mikela T. Sutrina, ARDC #6311408
                                           msutrina@sheppardmullin.com
                                           **SHEPPARD MULLIN**
                                           **RICHTER & HAMPTON LLP**
                                           70 West Madison Street, 48th Floor
                                           Chicago, Illinois 60602
                                           Telephone:  (312) 499-6300
                                           Facsimile:  (312) 499-6301

                                           *Counsel for Cubic Corporation, Cubic Transportation Systems Chicago, Inc., Cubic Transportation Systems, Inc. and Chicago Transit Authority*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COUNTS II, III & IV

OF THE CONSOLIDATED CLASS ACTION COMPLAINT AND MOTION TO STRIKE

REQUEST FOR PUNITIVE DAMAGES was electronically filed via ECF, which effects service

upon all interested parties.

Dated this 11th day of April, 2014.


 */s/ David S. Almeida*
David S. Almeida