# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE VENTRA CARD LITIGATION | ) | No. 13 C 7294 |
| | ) | |
| | ) | Judge Jorge L. Alonso |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court are two motions. For the reasons explained below, defendants' motion to dismiss Counts II, III and IV of the consolidated class action complaint is granted in part and denied in part, and plaintiffs' motion to strike portions of defendants' amended answer and affirmative defenses is granted.

## BACKGROUND

This is a putative class action in which plaintiffs, James D. Kenger, Min Ro, Stacy Allen, and Anish Patel, allege that defendants, Cubic Corp., Cubic Transportation Systems, Inc., Cubic Transportation Systems Chicago, Inc. (collectively, "Cubic" or "the Cubic entities"), and the Chicago Transit Authority ("CTA"), "assess[ed] unauthorized fees and charges on unsuspecting CTA passengers" in connection with Cubic's implementation of the CTA's Ventra fare system, which was launched in September 2013. (Consol. Class Action Compl. ("Compl.") ¶¶ 1-3.) Plaintiffs Allen and Kenger complain that they were charged twice for certain single fares; Kenger also complains that his account was improperly debited. (*Id.* ¶¶ 72, 83-84.) Plaintiffs Ro and Patel complain that their Ventra accounts were not properly credited. (*Id.* ¶¶ 87, 90.)

Plaintiffs' complaint contains claims for breach of contract (Count I); unjust enrichment (Count II, brought in the alternative to Count I); violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Count III); and violation of the Electronic Funds Transfer Act

(Count IV, asserted by Kenger and Ro only).  Plaintiffs seek to bring these claims on behalf of five classes:  "[a]ll persons with a Ventra Card[1] or Ventra account who have been deprived of funds that they attempted to transfer to their Ventra accounts" (Class One); "[a]ll persons with a Ventra Card or Ventra account who have been charged both a transfer and second fare when they paid for a fare plus a transfer" (Class Two); "[a]ll persons with a Ventra Card or Ventra account who have been charged more than once for one full fare" (Class Three); "[a]ll persons with a Ventra Card or Ventra account who have been charged when purchasing or loading transit value onto a Ventra Card or Ventra account and who did not receive credit for the charge" (Class Four); and "[a]ll persons who have a Ventra Card that is linked to an asset account as defined in 15 U.S.C. § 1693 et seq. and have been charged: (a) both a transfer and second fare when they paid for a fare plus a transfer; (b) more than once for one full fare; (c) any other charge not authorized by the CTA Fare Schedule and/or Ventra's Terms and Conditions." (*Id.* ¶ 91.)

Defendants move to dismiss Counts II, III, and IV pursuant to Federal Rule of Civil Procedure 12(b)(6) and to strike plaintiffs' prayer for punitive damages.[2]  Plaintiffs move to strike defendants' amended answer and affirmative defenses pursuant to Federal Rule of Civil Procedure 12(f).

---

[1] A "Ventra Card" is a "Ventra-administered fare card" that allows CTA riders to pay for transportation.  (Compl. ¶ 32.)

[2] Defendants request oral argument on their motion.  The request is denied because the briefs adequately present the issues and oral argument will not materially add to the Court's understanding.

## DISCUSSION

A. **Defendants' Motion to Dismiss Counts II, III, and IV and to Strike Plaintiffs' Prayer for Punitive Damages**

   1. **Legal Standards**

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipsis omitted). Under federal notice-pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts must] accept the well-pleaded facts in the complaint as true, but [they] 'need[ ] not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)).

### 2. Count II (Unjust Enrichment)

In Count II, plaintiffs allege that defendants have been unjustly enriched by receiving the benefits of overcharging them and that defendants' retention of these benefits is inequitable. (Compl. ¶¶ 106-09.) Count II is pleaded in the alternative to the breach of contract claim.

Quoting *Howard v. Chicago Transit Authority*, 931 N.E.2d 292, 298 (Ill. App. Ct. 2010), defendants first contend that "implied contracts are not recognized where one of the parties is a municipal corporation." (Defs.' Mem. Supp. Mot. 7.) The court in *Howard* upheld the dismissal of an unjust enrichment claim against the CTA for its allegedly wrongful retention of the balance on transit cards once they expired, relying on *McMahon v. City of Chicago*, 789 N.E.2d 347, 352 (Ill. App. Ct. 2003), where the court reasoned that "a contract cannot be implied if the statutory method of executing a municipal contract has not been followed." Plaintiffs respond that while Illinois may not recognize claims against municipal entities that are based on contracts implied in fact, it does recognize claims against them that are based on contracts implied in law. (Pls.' Resp. 7-8.) Plaintiffs cite *Woodfield Lanes, Inc. v. Village of Schaumburg*, 523 N.E.2d 36 (Ill. App. Ct. 1988), in which the court explained:

> The Village maintains that it is immune under the common law and under the Local Governmental and Governmental Employees Tort Immunity Act. The Village cites *Wacker-Wabash Corp. v. City of Chicago* (1953), 350 Ill.App. 343, 354, 112 N.E.2d 903, for the proposition that a municipality may not be held liable on an implied contract. However, that case involved a contract implied in fact: plaintiff therein alleged that the city's agents promised to complete certain improvements in return for plaintiff's agreement to develop its property in accord with the city's plans. The court held that the city could not be bound by its officers' promises when the officers did not follow the forms prescribing the manner in which the city can make contracts. A contract implied in law, on the other hand, does not arise from an intent to contract or a promise. The failure to follow proper contractual forms is therefore immaterial. Illinois courts have held municipalities and other governmental units liable on contracts implied in law despite the absence of proper contractual forms. (*Great Lakes Dredge and Dock Co. v. City of Chicago* (1933), 353 Ill. 614, 627, 188 N.E. 196; *Town of*

> *Montebello v. Lehr* (1974), 17 Ill. App. 3d 1017, 1021-22, 309 N.E.2d 231; *Welsbach Traffic Signal Co. v. City of Chicago* (1946), 328 Ill. App. 467, 480, 66 N.E.2d 471.) Moreover, contracts were implied in law in these cases despite the absence of prior appropriations, which is fatal to claims based on express contracts or contracts implied in fact. We conclude that the Village has no common law immunity from plaintiff's suit in quasi-contract.

*Id.* at 39 (some citations and some internal quotation marks omitted).

Plaintiffs claim that the CTA was unjustly enriched by receiving the benefits of "overcharging" them. (Compl. ¶ 106.) Neither plaintiffs nor defendants attempt to analyze the nature of this claim; plaintiffs suggest, but do not expressly contend, that it is brought under an implied-in-law theory. Plaintiffs allege, however, that defendants promised to charge only certain fares, that plaintiffs authorized only certain fees and charges, and that plaintiffs "reasonably expected Defendants to charge only the fees and fares specified in Ventra's Terms and Conditions and the CTA Fare Schedule." (*Id.* ¶¶ 47-48, 107.) In the Court's view, this is a claim for a contract implied in fact because it is based on alleged promises and intentions. *See Marcatante v. City of Chicago*, 657 F.3d 433, 440 (7th Cir. 2011) (applying Illinois law and explaining that an implied-in-fact contract arises from circumstances that allow an inference that "the parties had a deal"). Under *Howard*, *McMahon*, and *Woodfield*, a municipal entity cannot be held liable on a contract implied in fact. Therefore, plaintiffs' unjust enrichment claim will be dismissed without prejudice as to the CTA.

Defendants also argue that the Court should dismiss the unjust enrichment claim, even if it is pleaded in the alternative, because plaintiffs allege that the parties had a contractual relationship. "When two parties' relationship is governed by contract, they may not bring a claim of unjust enrichment unless the claim falls outside the contract. . . . The reason for prohibiting a claim of unjust enrichment between contracting parties is to prohibit a party whose

5

expectations were not realized under the contract from nevertheless recovering outside the contract." *Utility Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 688–89 (7th Cir. 2004) (applying Illinois law).

Plaintiffs allege that the CTA Fare Schedule and Ventra's Terms and Conditions govern the parties' contractual relationship. (Compl. ¶¶ 31, 40, 47-49, 64, 100-01.) Defendants acknowledge that plaintiffs "entered into a contract for carriage with the CTA," (Defs.' Mem. Supp. Mot. 7), and they have admitted that "passage on CTA vehicles creates a contract between the rider and the CTA," (Am. Answer ¶ 100). But the parties do not agree on the scope or terms of the contractual relationship,[3] and defendants appear to dispute that plaintiffs had any contract with the Cubic entities. (Defs.' Mem. Supp. Mot. 7 & n.9.) Furthermore, plaintiffs maintain that "it is not clear what contract with what party governed attempts by consumers to move balances from a [pre-Ventra] Chicago Card to a Ventra Account." (Pls.' Resp. 9.) It would therefore be inappropriate to dismiss the unjust enrichment claim at this juncture on the basis of a specific contract. *See Stevens v. Interactive Fin. Advisors, Inc.*, No. 11 C 2223, 2012 WL 6568236, at *6 (N.D. Ill. Dec. 17, 2012) (denying a motion to dismiss an unjust enrichment claim as barred by express contract, where the scope and nature of the alleged contracts at issue were unclear); *Muehlbauer v. Gen. Motors Corp.*, 431 F. Supp. 2d 847, 855 (N.D. Ill. 2006) ("[I]t is premature to dismiss the quasi-contract claims based on contracts not adequately presented to the court.").

Defendants also assert that unjust enrichment "is not a separate cause of action that, standing alone, will justify an action for recovery," citing *Cleary v. Philip Morris Inc.*, 656 F.3d

---

[3] Defendants contend in their reply that the "only governing contract" is the Ventra User Agreement. (Defs.' Reply 4 n.2.) That remains to be seen and in any event is not what plaintiffs allege.

511, 516 (7th Cir. 2011). (Defs.' Mem. Supp. Mot. 9.) But in *Cleary*, the Seventh Circuit noted that the "Illinois Supreme Court appears to recognize unjust enrichment as an independent cause of action" and ultimately found that it was "not necessary to resolve definitively whether Illinois law recognizes unjust enrichment as an independent cause of action" because the plaintiffs' allegations were insufficient to state a claim. *Id.* at 516, 518-20. Defendants clarify in their reply that their argument is that plaintiffs' unjust enrichment claim must be dismissed because it is "inextricably linked" to plaintiffs' statutory fraud claim, and plaintiffs "cannot show that Defendants were unjustly enriched without proof of deception." (Defs.' Reply 16-17.) This argument is rejected because plaintiffs' unjust enrichment claim is not premised on deception.

### 3. Count III (Illinois Consumer Fraud Act)

The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/2, prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, . . . in the conduct of any trade or commerce." Plaintiffs allege in Count III that defendants violated the ICFA by "misrepresent[ing] and/or fail[ing] to disclose the actual fees and fares consumers would be charged" and that these misrepresentations and omissions constitute both deceptive and unfair practices under the statute. (Compl. ¶¶ 116-17.)

Defendants first argue that Illinois does not recognize claims for statutory fraud against muncipal entities such as the CTA. In response, plaintiffs voluntarily dismiss the ICFA claim against the CTA. (Pls.' Resp. 2 n.1.)

Next, defendants contend that the ICFA claim should be dismissed because it is duplicative of the breach of contract claim. The Court agrees. Count III relies on the same facts as Count I. The Illinois Supreme Court has held that a defendant's repeated failures to fulfill contractual promises are not actionable under the ICFA, reasoning as follows:

> A breach of contractual promise, without more, is not actionable under the Consumer Fraud Act. . . . What plaintiff calls "consumer fraud" or "deception" is simply defendants' failure to fulfill their contractual obligations. Were our courts to accept plaintiff's assertion that promises that go unfulfilled are actionable under the Consumer Fraud Act, consumer plaintiffs could convert any suit for breach of contract into a consumer fraud action. However, it is settled that the Consumer Fraud Act was not intended to apply to every contract dispute or to supplement every breach of contract claim with a redundant remedy. We believe that a "deceptive act or practice" involves more than the mere fact that a defendant promised something and then failed to do it. That type of "misrepresentation" occurs every time a defendant breaches a contract.

*Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 844 (Ill. 2005) (internal citations and quotation marks omitted). Plaintiffs maintain that they allege "a scheme whereby Defendants obtained money that they were not entitled to through deception," (Pls.' Resp. 11), but this invocation of a "scheme" (which is not alleged in the complaint) adds nothing of substance to Count III. The conduct on which plaintiffs base their statutory fraud claim is identical to the conduct on which they base their breach of contract claim: the imposition of unauthorized charges and overcharges on their transit accounts. Because plaintiffs fail to allege any unfair or deceptive conduct distinct from the alleged breach of a contractual promise, Count III must be dismissed. *See Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 395 (7th Cir. 2011) ("[F]raud claims must contain something more than reformulated allegations of a contractual breach. Greenberger alleges that GEICO never intended to restore his car to its preloss condition and failed to disclose that it regularly breaches this contractual promise. These are breach-of-contract allegations dressed up in the language of fraud. They cannot support

statutory or common-law fraud claims.") (citation omitted); *Shaw v. Hyatt Int'l Corp.*, 461 F.3d 899, 900-02 (7th Cir. 2006) (affirming dismissal of ICFA claim where plaintiff sought merely "to enforce an unfulfilled contractual promise"); *W. Howard Corp. v. Indian Harbor Ins. Co.*, No. 10 CV 7857, 2011 WL 2582353, at *4-5 (N.D. Ill. June 29, 2011) (dismissing fraud claims pursuant to *Avery* where they amounted to no more than breach of contract and an alleged bad-faith denial of insurance benefits and noting that plaintiff's "attempts to shoehorn these failures into fraud by [conclusorily] alleging that the failures were intentional and part of a 'scheme to defraud'" were insufficient).

Moreover, Count III fails to satisfy the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b), which requires that circumstances of fraud be pleaded with particularity. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011) (when an ICFA claim alleges deception, the heightened pleading standard of Rule 9(b) applies). "Heightened pleading in the fraud context is required in part because of the potential stigmatic injury that comes with alleging fraud and the concomitant desire to ensure that such fraught allegations are not lightly leveled." *Id.* at 442.

In Count III, plaintiffs allege that defendants "misrepresented and/or failed to disclose the actual fees and fares consumers would be charged" and that they "intended for Plaintiffs and the Class to rely on these deceptive and unfair practices." (Compl. ¶¶ 117-18.) Plaintiffs fail to plead, however, any plausible grounds for suspecting that defendants were engaged in a fraudulent scheme, as Rule 9(b) requires. *See Pirelli*, 631 F.3d at 447. It is alleged on information and belief that defendants "knew or should have known" "that the contactless

9

technology used in Ventra would result in overcharges"[4] because "Cubic's previous contactless fare systems have a well-publicized history of overcharging unsuspecting customers." (Compl. ¶¶ 54, 57.) The complaint cites examples of some customers being overcharged by Cubic's fare systems in London, Brisbane, and Atlanta. (*Id.* ¶¶ 55-56.) The mere citation of previous problems with the systems that Cubic implemented in other cities is insufficient to make plaintiffs' allegations of fraud plausible. Therefore, plaintiffs fail to state an ICFA claim for deceptive practices. Plaintiffs point out that an ICFA claim can also be based on unfair practices, to which Federal Rule of Civil Procedure 8's relaxed pleading standard applies. *See Pirelli*, 631 F.3d at 446. But although Count III refers to "unfair practices," it is actually based on allegedly deceptive conduct--misrepresentations and omissions. (Compl. ¶¶ 116-18.)

Count III is dismissed without prejudice as duplicative of plaintiffs' breach of contract claim and for failure to plead fraud with particularity under Rule 9(b).

4.  **Count IV (Electronic Funds Transfer Act)**

In Count IV, plaintiffs Kenger and Ro allege that defendants debited their bank accounts "to pay for unauthorized charges" and therefore violated the Electronic Funds Transfer Act ("EFTA"). The stated purpose of the EFTA, 15 U.S.C. § 1693 *et seq.*, a consumer-protection statute, is "to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems." 15 U.S.C. § 1693(b). Defendants argue that Count IV should be dismissed because the complaint does not give them sufficient notice about how they allegedly violated the EFTA.

---

[4]The complaint states that under the system the CTA used prior to Ventra, "a CTA Chicago Card allowed a consumer to board a CTA vehicle by tapping the card on a fare reader. Ventra, however, allows consumers to use a contactless, personal debit or credit card . . . or a Ventra-administered fare card, known as the 'Ventra Card.'" (Compl. ¶ 32.)

The complaint does not state which provision of the EFTA was allegedly violated, nor does plaintiffs' brief. Plaintiffs' brief recites a number of portions of the EFTA and its implementing regulations, including the provision stating that "any person who fails to comply with any provision of this subchapter with respect to any consumer . . . is liable to such consumer." 15 U.S.C. § 1693m(a). But § 1693m "is not a basis of liability under the statute"; it simply provides "an enforcement mechanism for other provisions." *I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989, 1006 (N.D. Cal. 2012). Plaintiffs fail to explain which provision of the EFTA defendants allegedly violated, and, from its review of the statute, the Court is unable to discern any possible basis. Plaintiffs cite a handful of decisions in support of their argument that they have stated a valid EFTA claim, but most of those decisions are inapposite because they involved "preauthorized electronic fund transfers," which the EFTA defines as electronic fund transfers that are "authorized in advance to recur at substantially regular intervals," 15 U.S.C. § 1693a(10), and which are not alleged to be involved here. The only decision cited by plaintiffs that did not involve these kinds of transfers is *Friedman v. 24 Hour Fitness USA, Inc.*, 580 F. Supp. 2d 985 (C.D. Cal. 2008), in which the court held that plaintiffs stated a claim for violation of § 1693m but did not explain which substantive statutory provision was allegedly violated.

Count IV is dismissed without prejudice for failing to provide fair notice of the claim.

**5.     Punitive Damages**

Plaintiffs seek punitive damages, among other relief. (Compl. 22.) Defendants contend that this request should be stricken as unsupported because the complaint contains no allegations of malice or willfulness. As to the CTA, plaintiffs withdraw their request, (Pls.' Resp. 2 n.1), but contend that they have sufficiently alleged a basis for assessing punitive damages against the

Cubic entities because "Defendants were on notice that their system was likely to overcharge consumers." (Pls.' Resp. 21.) The Court disagrees. Punitive damages are available under the ICFA where there is gross fraud or malice or willfulness, *Martin v. Heinold Commodities, Inc.*, 643 N.E.2d 734, 757 (Ill. 1994), but plaintiffs must adequately allege one of these aggravating circumstances in order to support their prayer, *see, e.g., James v. Olympus Servicing, L.P.*, No. 02 C 2016, 2002 WL 31307540, at *4 (N.D. Ill. Oct. 9, 2002). As discussed above, the fact that Cubic may have experienced problems with its contactless fare card systems in other cities is not the equivalent of its knowledge that the Ventra system was likely to overcharge customers so as to rise to the level of malice or willfulness. Accordingly, the Court strikes the prayer for punitive damages without prejudice.

**B.     Plaintiffs' Motion to Strike**[5]

Plaintiffs move to strike several paragraphs of defendants' amended answer as well as defendants' second and fourth affirmative defenses and "reservation of rights."

Defendants argue that plaintiffs' motion is "nothing more than an irksome, dilatory tactic" that will have no material effect on the outcome of these proceedings. (Defs.' Resp. 1-2.) The Court is somewhat sympathetic to this argument; motions to strike are generally disfavored and usually "waste time by requiring judges to engage in busywork and judicial editing without addressing the merits of a party's claim," *U.S. Bank National Association v. Alliant Energy Resources, Inc.*, No. 09-cv-078-bbc, 2009 WL 1850813, at *3 (W.D. Wis. June 26, 2009). Plaintiffs' motion does little to advance the ball in this litigation. Nonetheless, there would have

---

[5]Plaintiffs withdraw their previous motion to strike, docket number 58. (Pls.' Mot. to Strike 1 n.1.)

been no occasion for a motion to strike had defendants made the effort to answer and plead their affirmative defenses properly.

Defendants answer paragraphs 1, 4, 5, and 59 of the complaint by stating, among other things, that the allegations set forth in those paragraphs "are not directed toward Defendants and thus no response is required." (Am. Answer 1-3, 13.) Defendants answer paragraphs 50, 51, and 53 of the complaint by stating, among other things, that each paragraph "does not allege the commission of any conduct by Defendants against the Plaintiffs, and therefore no response is required." (Am. Answer 11, 12.) These portions of the answer are unacceptable devices to avoid giving straightforward answers, and they fail to comply with Rule 8(b), which requires a responsive pleading to admit or deny each allegation or state that the party "lacks knowledge or information sufficient to form a belief about the truth of [the] allegation"—"nothing more and nothing less." *Sun Life Assurance Co. of Canada v. Great Lakes Bus. Credit LLC*, 968 F. Supp. 2d 898, 904 (N.D. Ill. 2013); *see also Donnelly v. Frank Shirey Cadillac, Inc.*, No. 05 C 3520, 2005 WL 2445902, at *1 (N.D. Ill. Sept. 29, 2005) ("Despite the seemingly straightforward and unambiguous options available to parties under Rule 8(b), some defense counsel persist in using unacceptable devices in their answers and, in so doing, violate Rule 8(b)."). Defendants' answers to paragraphs 1, 4, 5, 50, 51, 53, and 59 are therefore stricken with leave to amend.

In the introductory paragraph to their affirmative defenses, defendants state that they "hereby reserve the right to assert additional affirmative defenses as their investigation continues and as are appropriate." (Am. Answer 22.) This purported reservation of rights is stricken as improper. "The time to plead affirmative defenses under Federal Rule of Civil Procedure 8 is at the time of answer." *FDIC v. Mahajan*, 923 F. Supp. 2d 1133, 1141 (N.D. Ill. 2013); *Ill. Wholesale Cash Register, Inc. v. PCG Trading, LLC*, No. 08 C 363, 2009 WL 1515290, at *2

(N.D. Ill. May 27, 2009). If defendants wish to amend their pleadings in the future, they may seek leave of Court to do so pursuant to Rule 15.

Defendants' second affirmative defense states in its entirety that plaintiffs' recovery "is barred, in whole or in part, by their failure to mitigate damages." (Am. Answer 22.) Defendants' fourth affirmative defense states in its entirety that plaintiffs' claims are "barred, in whole or in part, by the doctrine of unclean hands because the Plaintiffs chose to participate in and conceal the alleged acts in anticipation of filing this lawsuit." (*Id.*) Both affirmative defenses are stricken with leave to amend for failure to comply with the pleading standards set forth in *Twombly* and *Iqbal*. *See, e.g.*, *Massenberg v. A & R Sec. Servs., Inc.*, No. 10 C 7187, 2011 WL 2909364, at *1 (N.D. Ill. July 18, 2011) (applying *Twombly* and *Iqbal* to affirmative defenses); *State Farm Fire & Cas. Co. v. Electrolux Home Prods., Inc.*, No. 10 C 7651, 2011 WL 133014, at *2 (N.D. Ill. Jan. 14, 2011) (same); *Groupon Inc. v. MobGob LLC*, No. 10 C 7456, 2011 WL 2111986, at *2 (N.D. Ill. May 25, 2011) (same).

## CONCLUSION

Defendants' motion to dismiss Counts II, III, and IV of the consolidated class action complaint [53] is granted in part and denied in part. Count II is dismissed without prejudice as to the CTA but is not dismissed as to the Cubic defendants. Counts III and IV are dismissed without prejudice. Plaintiffs' prayer for punitive damages is stricken without prejudice. Plaintiffs' motion to strike defendants' amended answer and affirmative defenses [71] is granted. Defendants may file by April 29, 2015 a second amended answer and affirmative defenses that conforms with this opinion. Plaintiffs' motion to strike defendants' answer and affirmative defenses [58] is terminated as withdrawn. This case is set for a status hearing on April 30, 2015 at 9:30 a.m.

**SO ORDERED.**              **ENTERED:    April 21, 2015**

_____
**JORGE L. ALONSO**
**United States District Judge**